UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| GEORGE H. HARPER, | ) | No. CV 04-3027-PJW |
| Plaintiff, | ) ) ) | MEMORANDUM OPINION AND ORDER |
| v. | ) ) | |
| JO ANNE B. BARNHART, Commissioner of the Social Security Administration, | ) ) ) ) | |
| Defendant. | ) ) | |

I.

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking reversal of the decision by Defendant Social Security Administration ("Agency") denying Supplemental Security Income ("SSI") benefits. He and the Agency ask the Court to remand the case to the Agency for further proceedings. For the reasons discussed below, the Agency's decision is REVERSED and the case is REMANDED for further proceedings.

II.

BACKGROUND

Plaintiff was born on June 25, 1953, and was 50 years old at the time of the relevant administrative hearing. (AR 58, 435.) He has an eleventh-grade education, and no past relevant work. (AR 387.)

Plaintiff filed protectively for SSI benefits on June 22, 1998. (AR 60-61.) He alleged disability since February 1, 1990, because of seizures. (AR 60, 299.) Plaintiff timely requested a hearing before an administrative law judge ("ALJ") after his claim was denied initially and on reconsideration. (*See* AR 39.)

Over the years, various ALJs held four hearings on Plaintiff's application. Although only the decision that followed the ultimate hearing is at issue in this case, the substance of all four hearings and the evidence introduced at each is relevant because of Plaintiff's claim that the ALJ's last decision disregarded relevant evidence. Accordingly, the Court will summarize the four hearings in chronological order.

A. <u>The First Hearing (June 8, 2000)</u>

The first hearing was held on June 8, 2000 by ALJ John O. Kent. (AR 486.) Plaintiff appeared with counsel and testified. (*See* AR 494-521.) The ALJ also heard testimony from Randi Hetrick, a vocational expert. (*See* AR 521-33.)

At the first hearing, Plaintiff stated he had been a forklift driver and machinist during the 1980s. (AR 512-14.) He added that he had last worked in 1992 at a Pic-N-Sav store and a Ralph's supermarket doing light stock work and assisting customers. (AR 495-96.) At this job, Plaintiff was on his feet up to six hours per eight-hour shift,

and was required to lift up to 20 pounds. (AR 495-97.) Lay-offs ended this employment. (AR 497.)

Plaintiff stated that a car accident had left him disabled in 1990. (AR 498.) In the wake of that accident, he suffered from dizziness, headaches, blurred vision, and seizures. (AR 498-99, 503.) By 2000, Plaintiff was experiencing seizures two or three times monthly, and severe headaches twice weekly, whether or not he took his medication. (AR 499, 502.) Dizziness was his only warning that a seizure was imminent. (AR 500.) During these seizures, Plaintiff would lose consciousness and, occasionally, control of his bowels; he would waken with a severe headache and be too dizzy to stand for approximately 20 minutes. (AR 500-01, 518-19.) He sustained another head injury while incarcerated in 1998 when, during a seizure, he fell off the top bunk of his bed and struck his head on the bedstead. (AR 503.) Plaintiff also experienced constant pain in his right arm and hand since falling into a dresser during a seizure. (AR 504-06.) He took medication for the pain in his arm, but this impaired his ability to concentrate. (AR 507-08.) Since early 2000, Plaintiff used a cane because he sometimes threw out his back during seizures; he could stand without it, but only for approximately 15 minute stretches. (AR 508-09, 514.) With the cane, Plaintiff could walk three to four blocks at a time, but he needed to sit for 15 to 20 minutes thereafter. (AR 509-10.)

Regarding his living situation and activities, Plaintiff stated he lived with his parents and attended church occasionally. (AR 510, 517.) He stated that, although he had a driver's license, he did not drive. (AR 510-11.) He estimated that he could still lift and carry 10-15 pounds. (AR 514-15.) Plaintiff stated that he would go to a

park located about eight blocks from his home three to four times weekly; there he would sit for approximately an hour at a time, watching people play. (AR 515-16.) He also would read for up to five hours per day at intervals, and watched television periodically. (AR 516.) His parents did most of the household chores, however. (AR 516-17.)

The ALJ next heard testimony from Ms. Randi Hetrick, the vocational expert. (AR 521.) After the expert classified Plaintiff's previous jobs, the ALJ posed the following hypothetical question:

> [A]ssume we have a person that's between the ages of 45 and 50 with an 11th grade education, past work of the [Plaintiff]. Let's assume we have no restrictions with standing and walking, and we have no restriction in lifting, carrying, pushing or pulling with the non-dominant left upper extremity. But we do have a restriction with regard to lifting, carrying, pushing and pulling of the right upper extremity to less than 10 pounds on an occasional basis. [¶] And let's further assume that the individual cannot perform fine manipulation with the dominant right upper extremity, and is limited to occasional gripping and grasping, but no forceful gripping and grasping. And let's further assume that the individual should not be working around hazardous equipment or heights, and no occupation which requires driving.

(AR 522.) The expert testified that a person with these restrictions could not perform Plaintiff's previous work, but stated that he could perform the unskilled jobs of information clerk, cashier, ticket-taker, and usher; even with eroded numbers, all of these jobs existed

in significant numbers in the local economy. (AR 523-24.)  If, however, a person had seizures as often as three times monthly on an unpredictable basis, or unpredictable headaches twice monthly that would cause a stoppage of work for half-hour intervals, the vocational expert opined that he would be unable to perform any of these jobs.[1] (AR 524-26.)  The expert further opined that, if the person had no use of his right arm at all, the numbers of the positions would be further eroded. (AR 526-27.)  Finally, Ms. Hetrick opined that, if Plaintiff used his cane, he could not perform any of the jobs she had listed. (AR 529-30.)

On September 11, 2000, the ALJ issued his first decision. (*See* AR 298-303.)  Applying the five-step sequential process, the ALJ determined that Plaintiff's seizure disorder, degenerative joint disease of the right elbow, and carpal tunnel syndrome of the right hand were "severe" impairments but did not meet or equal a Listing. (AR 300.)  After noting that Plaintiff could not return to his previous jobs, the ALJ found that he could perform the other jobs that the vocational expert had identified; accordingly, Plaintiff was found not disabled at step five. (AR 301-02.)

Plaintiff appealed this decision. (AR 304-12.)  On April 12, 2002, the Appeals Council granted his request for review and remanded the matter to the ALJ with instructions to make a proper credibility determination, a clear assessment of Plaintiff's residual functional

---

[1] Ms. Hetrick added that, if Plaintiff had a seizure on the job only once per month without losing consciousness, the usher position would be eliminated and the remaining jobs would be further eroded by 50 percent. (*See* AR 531-33.)

5

1  capacity, and obtain supplemental testimony from another vocational
2  expert.  (AR 314-15.)

3  B.    The Second Hearing (August 18, 2002)

4      The second hearing was held on August 18, 2002; again, ALJ Kent
5  presided.  (AR 455-85.)  Once more, Plaintiff appeared with counsel
6  and testified.  (*See* AR 462-67, 471-83.)  The ALJ also heard testimony
7  from Mr. Freeman Leeth, a vocational expert.  (*See* AR 459-61, 467-70,
8  483-84.)

9      Plaintiff reiterated his employment history, and stated that he
10 still had not worked since 1992.[2]  (AR 462-7.)  He recounted the
11 circumstances of his automobile accident, and explained that, despite
12 his medication, he still suffered seizures two to three times monthly,
13 headaches on a daily basis, and dizziness on a near-daily basis.  (AR
14 470-72, 474-75.)  Plaintiff testified that efforts to concentrate
15 brought on dizziness and headaches.  (AR 482.)  He stated that his
16 dizzy spells sometimes, but not always, ended in full-blown seizures,
17 but emphasized that he always lost consciousness during his seizures.
18 (AR 472-74.)  Regarding his other impairments, Plaintiff stated that
19 he still experienced pain in his arm and hand, notwithstanding a
20 carpal tunnel release operation and physical therapy he had undergone
21 the year before.  (AR 476-78, 480-81.)  When this pain flared up, it
22 was so severe that Plaintiff was unable to use his right hand.  (AR
23 479.)  Since the operation, Plaintiff wore a brace on his right hand.
24 (AR 480.)  Plaintiff also testified that he continued to use a cane
25 for support, particularly when he became dizzy.  (AR 482-83.)

---

[2] Plaintiff's counsel stated that the ALJ should consider Plaintiff's disability "from June of '98 when he filed."  (AR 470.)

1    Freeman Leeth, the vocational expert, also testified.  He stated
2 that Plaintiff's prior work fell into the categories of janitor and
3 forklift driver, both performed at the medium-to-heavy level of
4 exertion.  (*See* AR 459-61, 467-68.)  Plaintiff's attorney then posed
5 the following hypothetical question to Mr. Leeth:

> [Assume] that we have an individual of [Plaintiff's] age
> [and] education and that [Plaintiff] is only able to walk
> two blocks and able to sit for a period of two to three
> minutes.  If we further assume that this person may at any
> time, without warning, have a seizure.  Which causes him to
> lose consciousness, and if we assume that when this happens
> the, before it's possible for him to regain any kind of the
> usual activity at least an hour would have passed.  If we
> also assume that this individual suffers from dizziness
> apart from the seizures and that when the dizziness occurs,
> it may occur at any time during the day.  And when that
> happens, he must sit or lay down and do nothing for a period
> of 30 minutes.  And if we assume further that this
> individual is subject to severe headaches, which lasts for a
> period of say 15 minutes during which time he cannot
> concentrate.  And furthermore, if we assume that this
> individual is subject to occasional pain in the right hand
> and right forearm, and at the nape of the neck and that such
> pain occurs without warning and lasts and debilitates the
> individual for say 15 minutes.  Given, and if we assume that
> the same person has no ability to grip with his right hand,
> and with a maximum capability of lifting with the right hand
> of two to three pounds, and 20 pounds in the left hand.

(AR 483-84.)  The vocational expert testified that no jobs existed for a person with these limitations, and the ALJ adjourned the hearing without posing any hypothetical questions of his own to Mr. Leeth. (*See* AR 484-45.)

The ALJ issued his second decision on September 18, 2002.  (AR 386-93.)  At step one of the sequential process, the ALJ determined that Plaintiff had not worked since 1992.  (AR 387.)  Proceeding to steps two and three, the ALJ found that Plaintiff's limitations-- including a "limitation of function of the right upper extremity," seizures, a hip contusion, and sinus problems--although severe, did not meet or equal a Listing.  (AR 387.)  At step four, the ALJ conceded that Plaintiff had demonstrated "a 'severe' impairment but no relevant work experience."  (AR 390.)  Relying on the testimony that vocational expert Randi Hetrick provided at the first hearing, the ALJ then found that Plaintiff could make the vocational adjustment to perform other work in the local economy, and determined that he was not disabled at step five of the sequential process.  (AR 390-92.)

Once more, Plaintiff appealed this ruling.  (AR 396-99.)  The Appeals Council again granted review, remanding the matter to a different ALJ with instructions to obtain additional testimony from a vocational expert "to clarify the effect of the assessed limitations on [Plaintiff's] occupational base."  (AR 402-03.)

C.   The Third Hearing (August 5, 2003)

ALJ Edward Schneeberger presided at the third hearing, which was held on August 5, 2003.  (AR 435.)  Plaintiff once again appeared with counsel, but did not testify.  (*See* AR 437.)  Citing the limited scope of the second remand, the ALJ only took testimony from Freeman Leeth,

1  the same vocational expert who had testified at the second hearing.
2  (*See* AR 437, 440-51.)
3       At the start of the hearing, Plaintiff's counsel cobbled together
4  the following hypothetical question for the vocational expert:
5       [Assume] an individual [who needed to] miss about seven
6       [unscheduled] hours weekly for medical reasons. [. . . .]
7       [Assume that, because of his seizures, he] would be away
8       from his work [. . . .] one to two times a month [. . . .]
9       [f]or an additional four [unscheduled] hours. [. . . .]
10      Also he's not to lift more than ten pounds with his right
11      upper extremity.  No forceful gripping or grasping with his
12      right hand.  Only occasional non-forceful gripping or
13      grasping [. . .] with the right upper extremity. [. . .]
14      [O]nly occasional fine manipulation with the right upper
15      extremity.  No driving.  And no working around heavy
16      equipment.  And [. . .] a limitation as to no heights, but
17      no limitation for the left side.
18 (*See* AR 440-43.)  Mr. Leeth opined that a person with these
19 limitations could not do any work.  (AR 443.)
20      The ALJ then posed a hypothetical question of his own to the
21 vocational expert:
22      [Assume that] [t]his hypothetical person would [. . .] be
23      able to lift [. . . .] less than ten pounds [with his right
24      arm].  [Assume that] [h]e would not be able to use his right
25      dominant upper extremity for forceful gripping or grasping.
26      Would not be able to use the right dominant upper extremity
27      for more than occasional non-forceful gripping or grasping
28      or for fine or gross manipulation, that's occasionally.

>     This person would not be able to do any driving, work around
>     heights.  Would not be able to work around hazardous
>     equipment and would have no exertional limitations on his
>     left side.

(AR 443.)  The vocational expert testified that this hypothetical person could work as an unskilled security guard, a parking lot attendant, and an inspector, all jobs that existed in significant numbers in the local economy.  (*See* AR 444-46.)  The ALJ then adjourned the hearing.[3]

   The ALJ issued the third decision on December 23, 2003.  (AR 13.)  Inexplicably, the third decision was identical--word-for-word--to the second decision, which the Appeals Council had vacated.  (*Compare* AR 13-20 *with* AR 386-93.)  Thus, the third decision did not account for any of Mr. Leeth's testimony at the third hearing, and did not mention Exhibit 13F, which had been admitted at the supplemental hearing.  (*See* AR 13-20.)

   Plaintiff sought review of the third decision.  (AR 9.)  On March 12, 2004, the Appeals Council denied review.  (AR 6-7.)  The third decision of the ALJ became the final decision of the Agency, and Plaintiff timely filed suit in this Court.

---

[3] ALJ Schneeberger held a supplemental hearing on August 18, 2003.  (AR 432.)  The sole purpose of this supplemental hearing was to admit Exhibit 13F, evidence that Plaintiff had offered at the third hearing, but which had proved too voluminous for the ALJ to digest on the spot.  (*See* AR 438.)  Having read the proffered evidence and established its relevance, the ALJ admitted Exhibit 13F at this supplemental hearing.  (AR 433.)  The ALJ then adjourned the hearing.

## III.

## STANDARD OF REVIEW

"Disability" under the applicable statute is defined as the inability to perform any substantial gainful activity because of "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Court may overturn the ALJ's decision that a claimant is not disabled only if the decision is not supported by substantial evidence or is based on legal error. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).

Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).) It is "more than a mere scintilla but less than a preponderance," *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998), and "does not mean a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

"The Court must uphold the ALJ's conclusion even if the evidence in the record is susceptible to more than one rational interpretation." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). Indeed, if the record evidence can reasonably support either affirming or reversing the Agency's decision, this Court must not substitute its judgment for that of the ALJ. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the ALJ committed error but the error was harmless, reversal is not required. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003)(applying the harmless error standard).

IV.

DISCUSSION

This is the rare case where the Plaintiff does *not* ask the Court to award him benefits. (*See* Motion at 14-15.) Rarer still, both parties agree that remand is necessary. (*See* Motion at 1; *see also* Cross-Motion at 3.) What accounts for this clash of motions is a disagreement about what should be done on remand.

For his part, Plaintiff argues that the third decision was erroneous because it (1) relied on outdated vocational expert testimony rather than the new testimony adduced at the third hearing (*see* Motion at 8-9); (2) failed to update Plaintiff's age category (*see* Motion at 9-10); (3) disregarded the new evidence presented after the second decision, including Exhibit 13F (*see* Motion at 11-12); (4) did not make a new credibility determination (*see* Motion at 13-14); and (5) neglected to take testimony from a medical expert regarding the efficacy of the type and dosage of medicine Plaintiff had been prescribed for his seizures. (*See* Motion at 14.)

The Agency, on the other hand, contends that, by "inadvertently" issuing a decision that was identical to the previous decision vacated by the Appeals Council, the ALJ effectively issued no decision at all. (*See* Cross-Motion at 4.) On the theory that "an ALJ decision has yet to be issued on the oral hearing held on August 5, 2003 and the additional evidence submitted at that time," the Agency argues that the Court should do no more than issue a remand pursuant to 42 U.S.C. § 405(g), with instructions to the ALJ to issue a third decision. (*See* Cross-Motion at 3-4, 6.)

As the parties agree, the third decision was defective insofar as it represents a carbon-copy of the second decision, which the Appeals

1  Council vacated.  (*Compare* Motion at 4 *with* Cross-Motion at 3.)  In
2  light of the fact that the Appeals Council specifically instructed the
3  ALJ to "issue a new decision," (*see* AR 403), this was error.  *See* 20
4  C.F.R. § 404.977(b)("The [ALJ] *shall* take any action that is ordered
5  by the Appeals Council and may take any additional action that is not
6  inconsistent with the Appeals Council's remand order.")(emphasis
7  added).  Reversal is warranted in this situation.  *See Barrientos v.*
8  *Barnhart*, No. 00 C 7404, 2003 WL 22844253, at *10, *13 (N.D. Ill. Nov.
9  26, 2003)(reversing where the ALJ attempted to "incorporat[e] the
10 prior vacated decision into the new decision").  Remand may be
11 productive where, as here, additional proceedings can remedy defects
12 in the original administrative proceedings.  *See Celaya v. Halter*, 332
13 F.3d 1177, 1184 (9th Cir. 2003)(ordering "remand to the ALJ for a
14 proper step-four analysis").  Accordingly, the Court will remand the
15 matter to the ALJ for further proceedings.

16      The Court will not, however, accept the Agency's invitation to
17 treat the third decision as though it never had been made.  It is far
18 from clear that the ALJ's third decision was issued "inadvertently."[4]
19 Inadvertent or otherwise, all that matters here is that the Appeals
20 Council *denied review* of the third decision.  (*See* AR 6-8.)  Although
21 one could argue that the Appeals Council's denial of review of the
22 same decision that it had vacated a year earlier was another
23 inadvertent step, it had the legal effect of exalting a previously-
24 vacated decision into "the final decision of the [Agency]."  (*See* AR

---

[4] ALJ Schneeberger modified the signature block of ALJ Kent's decision to show his own name, and signed it. (*See* AR 20.) He then attached a "Notice Of Decision--Unfavorable" with a current date and, again, signed it himself. (AR 12.)

13

6.)  The finality of that third decision is the *only* basis for this Court's jurisdiction.  *See* 42 U.S.C. § 405(g); *see also* 20 C.F.R. § 404.900.  The parties know this: Plaintiff invoked this jurisdictional basis in his Complaint, and the Agency conceded jurisdiction in its Answer.  This means that, like it or not, the third decision must form the starting-point for any remand instructions that this Court can provide.

That being so, and because the Agency does not offer any substantive opposition to the specific assignments of error that Plaintiff has made, (*see* Cross-Motion at 3-6), the Court agrees with Plaintiff's assessment of the defects of the third decision.  These defects must be corrected on remand.  The ALJ is directed to hold a new hearing and address the following:

1. *Credibility Determination*: When the Appeals Council vacated the second decision, it instructed the new ALJ to render a "new decision."  (AR 403.)  This means that the ALJ was required to make his *own* credibility findings, and not simply accept those of the previous ALJ.  *See Smolen v. Chater*, 80 F.3d 1273, 1279-85 (9th Cir. 1996)(accepting that the Appeal's Council's remand to a different ALJ with instructions to render a "new decision" had included the directive to render new credibility findings).  On remand, the ALJ must issue a decision that assesses Plaintiff's credibility anew based on all evidence of record.  *See* Social Security Regulation ("S.S.R.") 96-7p (July 2, 1996)(explaining that, if the ALJ finds the claimant's testimony not to be credible, the ALJ must specifically make findings that support this conclusion, and the findings must

1 | be sufficiently specific to allow a reviewing court to
2 | conclude the ALJ rejected the claimant's testimony on
3 | permissible grounds and did not arbitrarily discredit the
4 | claimant's testimony).
5 | 2. *Non-Compliance With Medication Or Treatment*: Plaintiff
6 | concedes that the record contains evidence that he had not
7 | been fully compliant with prescribed seizure medications.
8 | (*See* AR 14.)  Ordinarily, "an unexplained, or inadequately
9 | explained, failure to seek treatment or follow a prescribed
10 | course of treatment" may negatively affect a claimant's
11 | credibility determination.  *Fair v. Bowen*, 885 F.2d 597, 603
12 | (9th Cir. 1989).  Plaintiff contends, however, that he had
13 | stopped taking his seizure medications because they had been
14 | prescribed at sub-therapeutic levels for a person of his
15 | body mass and, thus, were ineffective.  (*See* Motion at 13-
16 | 14.)  If the ALJ relies on Plaintiff's non-compliance with
17 | his medications on remand, he should consider whether the
18 | record supports Plaintiff's claim that he had valid reasons
19 | for refusing to take this medication.  *See Smolen*, 80 F.3d
20 | at 1284 (noting that, "[w]here a claimant provides evidence
21 | of a good reason for not taking medication for h[is]
22 | symptoms, h[is] symptom testimony cannot be rejected for not
23 | doing so"); *see also Regennitter v. Comm'r of Soc. Sec.*
24 | *Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999)(holding that
25 | where "none of the many physicians [a claimant] has seen has
26 | suggested *effective* treatment for his pain, the amount of
27 | medical treatment [the claimant] has received is not
28 |

necessarily inconsistent with his complaints")(emphasis added).

3. *New Medical Evidence*: The ALJ's post-remand decision must account for any new medical evidence of record, including, but not limited to, Exhibit 13F, which was offered into evidence at the third hearing on August 5, 2003, and accepted into evidence at the supplemental hearing on August 18, 2003. (*See* AR 414-29.) The ALJ's post-remand decision must take into account this evidence, along with any other relevant evidence of Plaintiff's impairments generated after August 5, 2003. *See* 20 C.F.R. § 404.1520(a)(3).

4. *Vocational Expert Evidence*: The ALJ must call a vocational expert to assess Plaintiff's job prospects in light of the fact that Plaintiff appears to suffer from severe, non-exertional limitations.

5. *Plaintiff's Age Category*: Since Plaintiff filed this claim, he has gone from being a "younger individual" to a person "closely approaching advanced age" within the meaning of the regulations. *See* 20 C.F.R. § 404.1563. On remand, the ALJ must take into account the fact that Plaintiff moved from one age category to the next when assessing his ability to make a vocational adjustment at step five of the sequential process. *See* 20 C.F.R. § 404.1563(b)(requiring the ALJ to use the age categories that apply to a claimant during the period for which the ALJ must determine if the claimant is disabled).

16

V.

CONCLUSION

For all the foregoing reasons, the Agency's decision is reversed and the case is remanded to the Agency for further proceedings consistent with this Memorandum Opinion and Order.

IT IS SO ORDERED.


DATED:    September __9__, 2005.



                                        ___/s/_____
                                        PATRICK J. WALSH
                                        UNITED STATES MAGISTRATE JUDGE

S:\PJW\Cases-CLOSED\Closed-Soc Sec\HARPER\Memo Opinion.wpd